[Sac. No. 870. Department Two.—June 2, 1902.]

## L. A. RICHARDS, Appellant, v. P. B. FRASER et al., Respondents.

PARTNERSHIP—PURCHASE AND USE OF FARM.—Where the evidence shows an agreement made between the plaintiff and the defendants, that they were to acquire a tract of farming land, in which the plaintiff was to have a like interest with each of the defendants, and that they were to farm it in partnership, which was in fact done, the relation of partnership was established between them by the agreement and by the payment then made by the plaintiff to the defendants on account of the purchase money for his interest.

ID.—INTERESTS IN FARM PURCHASED—FIDUCIARY RELATION OF PARTIES.—It is immaterial whether the interests of the parties respectively were partnership interests or merely interests in common, and whether what was contributed to the partnership was merely the use of the lands pending its continuance, so far as relates to the fiduciary relation between the parties, who purchased the lands for the use of the partnership, to the extent necessary to the contemplated operations. Aside from the partnership relation, the defendants, upon the agreement made and the payment by plaintiff to them on account of the purchase money, became trustees for the plaintiff to the extent of his one-fourth interest in the land to be acquired.

ID.—FRAUD OF DEFENDANTS—IMPOSITION PRACTICED UPON PLAINTIFF—ACCOUNTING.—It appearing that the plaintiff was to pay for his interest in the land to be acquired at the rate paid by the defendants in the purchase, and that he was induced by the misrepresentations of the defendants, or, at least, by their designed suppression of the truth, to pay at a much higher rate, he is entitled, in an action brought by him for an accounting, to be credited with the difference between the amount paid and the amount agreed to be paid.

ID.—SETTING ASIDE RELEASE.—It is sufficient to justify the court in setting aside a release executed by the plaintiff to the defendants, that when it was executed the plaintiff was ignorant of the fraud and imposition practiced upon him by the defendants.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Edward I. Jones, Judge.

The facts are stated in the opinion.

Rodgers & Paterson, William M. Gibson, and C. H. Fairall, for Appellant.

Nicol, Orr & Nutter, and Budd & Thompson, for Respondents.

SMITH, C.—The issues involved in this case are fully set forth in the report of the former appeal (*Richards* v. *Fraser*, 122 Cal. 456), and need not be restated. The suit was brought to establish an alleged partnership between the plaintiff and the defendants in the purchase and farming of a tract of land in the county of San Joaquin, known as the Sargent tract, containing three thousand acres, and also to set aside a release executed by the plaintiff to the defendants, and for an accounting. The defendants deny that plaintiff was a partner in the purchase of the land, and plead, as to the farming, a settlement of accounts. They also plead in bar of the plaintiff's claims the release referred to in the complaint. The findings and judgment were for the defendants. The plaintiff appeals from the judgment and from an order denying his motion for a new trial.

With regard to the first issue, it is found by the court, in effect, that by deed of date December 7, 1891, the land in question was conveyed by one Snead, one half undivided to the defendant Rosenbaum, and one fourth to each of the other defendants; that, on the 12th of December, 1891, the defendant Rosenbaum, in writing, agreed to sell to the plaintiff 750 acres (being one fourth of the land) for the price of $75 per acre (or, in the aggregate, the sum of $56,250), receiving on account of the purchase price the sum of $6,250; and that thereupon, and subsequently to this transaction, a partnership was formed by the plaintiff and defendants for the purpose of farming the land for the year 1891-1892.

But these findings are obviously incorrect in several important particulars. For it appears from the testimony of the defendants, as well as that of the plaintiff, that several months before the making of the deed the plaintiff and defendants had (at least as to the farming) agreed upon the partnership, and also, in connection with that purpose, that plaintiff was to acquire an interest in the land. It also appears that the interests of the defendants in the land conveyed were equal, and that of the two fourths of the land conveyed to Rosenbaum, one fourth was taken by him in trust (as they contend) for them and himself, or, as

claimed by the plaintiff, in trust to be conveyed to him under his agreement with defendants; and accordingly the money received by him from the plaintiff was divided equally among the defendants. The real question involved is therefore not as to whether there was an agreement between the parties with reference to the plaintiff's becoming interested in the land (for on this point there is no dispute), but as to the nature and terms of the agreement.

There is some discrepancy in the testimony as to the date of the agreement. The negotiations for the purchase of the land were commenced by the defendants in August, 1891, and the purchase was agreed upon in October. The defendants say there was no agreement prior to the latter date; which is probably true with reference to the closing of the contract. But it appears from the testimony of the plaintiff that prior to that date there was an agreement or understanding that he should become interested with the defendants; and that this was the case appears almost conclusively from the fact of his participation in the selection of the land, from the statement to that effect made by Guernsey to Stewart (which is not denied), and from the testimony of Williamson and Laughhead. The date of the agreement is, however, immaterial, except as throwing light on the nature of the transaction. There can be therefore no ground for the contention of the defendants, and the finding of the court, that the plaintiff's interest in the land was initiated by the agreement made to him by Rosenbaum of date December 12, 1891, which was but the execution of the agreement made in October.

Whether the check to Rosenbaum for the first payment of the purchase money ($6,250) was given at the latter or the former date is a question warmly disputed by the parties. But the evidence, we think, establishes without substantial conflict, that it was given (as claimed by the plaintiffs) in October. The plaintiff so testified, and, on cross-examination, stated that he "had a memorandum of the time at home." This was denied by Rosenbaum; but the memorandum referred to by the plaintiff was afterwards produced, which proved to be a stub of his check-book, on which the check to Rosenbaum was noted in his own handwriting, as of date October 22, 1891, and of which Rosenbaum could give no

explanation consistent with his story. This, with the subsequent testimony of the plaintiff, puts it beyond doubt that Rosenbaum was mistaken, and that the check was given in October, and the contract between plaintiff and defendants thus consummated in that month. (*Driscoll* v. *Market St. etc. Ry. Co.*, 97 Cal. 562-563.[1])

As to the terms of the agreement, it is clear, from what has been said, that two of them were, that the plaintiff was to acquire a fourth interest in the land, and that he and the defendants were to farm it in partnership, as in fact they afterwards did. The relation of partnership was therefore established between them, October 22, 1891, by the agreement then concluded, and by the payment to Rosenbaum on account of the purchase money. With regard to the interests of the parties, respectively, in the land, it would seem from the partition following the execution of the deed and of the written agreement of December 12, 1891, that, technically speaking, these were not "partnership interests," but merely "interests in common" (Civ. Code, secs. 682 et seq.); and that what was contributed to the partnership was merely the use of the lands pending its continuance. But this, we think, is an immaterial circumstance. The parties stood in the relation of partners, and the lands were purchased for the use of the partnership to the extent necessary to the contemplated operations; and as to the fiduciary relation thus established, it can make no difference whether the purchase was by the firm or merely on joint account, or for the common use, and for the use of the firm, as above stated only. For, leaving out of view the partnership relation existing between the parties, the defendants, upon the agreement and the payment on account of the purchase money, became trustees for the plaintiff to the extent of one fourth of the land to be acquired. (Civ. Code, secs. 853, 2228, 2235, 2411.)

The only term of the agreement remaining to be considered is as to the price to be paid by the plaintiff for his interest. On this point also there is some discrepancy in the testimony, but it is claimed by the appellant's counsel that it is apparent only, and that there is in fact no substantial conflict. To determine this point a somewhat detailed examination of the testimony will be necessary. In considering it, it is to be borne in mind that the consideration paid by the defendants,

[1] 33 Am. St. Rep. 203.

though nominally seventy-five dollars per acre, was paid partly in lands at an estimated value, and that the actual value of the consideration was much less.

The plaintiff says that the negotiations between him and the defendants commenced early in September, 1891; and as to the terms he says: "There were four of us going in equally to purchase. The four of us should go in as equal partners in buying the land. If I went in at all, those were the grounds I would go in on. It was some time before I really consented to go in, but when I did . . . I was to pay $6,250 on the land, and the balance Mr. Rosenbaum said he would take care of. They said they would have to pay $75 per acre. . . . No one of the defendants ever told me that they were, as part of the consideration, giving lands of their own to Mr. Snead. I did not learn of that fact till 1895 or 1896 . . . after I had turned over everything to them, and settled up. At the time of the purchase they said they were paying $75 per acre."

In considering this statement, it will be observed that the plaintiff makes use of two expressions, as indicating the terms on which he was to go in with the defendants,—namely, that he was to go in *"equally,"* and that he was to go in *"as equal partner"* in buying the land. The latter expression may, however, and indeed clearly is to be understood not in the technical but in the popular sense, as denoting a purchase on joint account (Civ. Code, sec. 13), and therefore as merely synonymous with the former. Hence the careful denials of the defendants,—often repeated,—that it was not understood that he was to go in *as partner* in the purchase of the land, and that the word *"partner"* was not used, may be disregarded as ambiguous and evasive,—that is to say, either as denying that he was to go in "equally," or on equal terms, or as denying that he was to go in as partner, in the technical sense; and that it was used in the latter sense appears from the fact that both in their pleadings and in their testimony the defendants are particular in denying that they themselves were partners, either in the purchase of the land or in the farming. Otherwise, we find no contradiction of the plaintiff's statement in the testimony of the defendants.

Nor is there any contradiction as to the price named. The defendants say that this was seventy-five dollars per

acre; and this, though not expressly said by the plaintiff, is to be inferred from what he says. But the gist of the plaintiff's claim is, that he was to purchase at the same rate as the defendants, and that he was told by them that the price paid was seventy-five dollars per acre; and this, we think, is not effectively denied by any of the defendants, all of whom testify that they never told him they were paying seventy-five dollars per acre *in cash,* which rather tends to confirm the plaintiff's statement than the contrary; and his statement is also confirmed by the uncontradicted testimony of Stewart, to the effect that Guernsey told him that they were paying seventy-five dollars per acre, and "spoke of Mr. Richards going in with them in purchasing this land," which at least shows that the defendants were claiming—as throughout the trial they continued to claim—that they had agreed to pay seventy-five dollars per acre, and that no secret was made of their claim.

On the whole, it seems clear that under the agreement the plaintiff was to pay for the land to be acquired by him at the rate paid by the defendants in the purchase, and that he was induced by the misrepresentations of the defendants, or at least by their designed suppression of the truth, to pay at a much higher rate. He is therefore entitled to be credited in his accounting with the difference between the amount paid and the amount agreed to be paid, and to that end a new trial must be ordered.

This conclusion renders it unnecessary to consider the other objections to the account rendered, which will be involved and disposed of on the new trial. Nor will it be necessary to consider other objections made to the release. It is sufficient that when it was executed the plaintiff was ignorant of the imposition practiced on him.

We advise that the judgment and order appealed from be reversed

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.